Rick Klingbeil, OSB #933326
email: rick@klingbeil-law.com
RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565
Fx: 503-427-9001

of Attorneys for Plaintiff
Additional attorneys listed on final page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LEE WALTERS, MD**, an Oregon resident,<br><br>　　　　　**Plaintiff**,<br>　　v.<br><br>**VITAMIN SHOPPE INDUSTRIES, INC.**, a Delaware corporation,<br><br>　　　　　**Defendant**. | Case No. 3:14-cv-01173-PK<br><br>**RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE, MOTION TO STRIKE AND SUPPORTING MEMORANDUM** |

## INTRODUCTION

Defendant's motion begins in a somewhat curious manner, stating that this is plaintiff's "third bite at the apple." This statement is apparently to infer that there have been three different failed attempts to plead this case correctly. Defendant's statement

Page 1    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

is misleading.   The material changes between the *Complaint* and *First Amended Complaint* in this case were that plaintiff dropped claims under the California consumer protection statute, eliminated the Jane Roe plaintiff pursuant to an agreement between the parties, and named the correct Vitamin Shoppe entity from a plethora of corporate shells and entities with "Vitamin Shoppe" as part of their name.

The *Second Amended Complaint* ("*SAC*") was not a "correction" to an earlier fraud claim, but instead stated *for the first time*, claims for fraud[1] and unjust enrichment.  Plaintiff is at a loss to understand the basis for defendant's claim that an initial fraud claim in the earlier two complaints was somehow amended.  That simply didn't happen.  See, Dkt. 1 (*Complaint*), 18 (*First Amended Complaint*).

Regardless, defendant's claim that this is a substantive "third bite at the apple" is misleading, without merit, and should have no bearing on the resolution of this matter.

**I. A.         Plaintiff has standing necessary to assert claims for injunctive relief.**

Defendant claims that because plaintiff now knows about the allegedly defective labeling of the products at issue, there is no likelihood that he could be injured by them in the future and has no standing to assert a claim for injunctive relief.

Defendants in *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 533 (N.D.Ca, 2012) made an almost identical argument, which was rejected. In *Ries*, plaintiffs brought a class action based on the inclusion of high fructose corn syrup in tea marketed as "all natural" or "natural." Similar to defendant's position in this case, they argued that because plaintiffs now knew of the misrepresentation, they could not be misled by it in the future.  The *Ries* court disagreed, finding no evidence that

---

[1] Admittedly, the caption of the Complaint and First Amended Complaint indicated a fraud claim, but none was contained within the body of the document.

Page 2    **RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....**

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

plaintiffs had disavowed ever purchasing Arizona tea products in the future. *Id*.

The *Ries* court also stated:

> As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result. *See, e.g., Henderson v. Gruma Corp*., No. 10–04173, 2011 WL 1362188 at *7 (C.D.Cal. [ ] 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing."). *Id.*

See, also, *Richardson v. L'Oreal United States, Inc.*, 2013 U.S. Dist. LEXIS 158599, at *23 (D.D.C., 2013) (Plaintiffs alleged that defendant falsely and deceptively advertised its hair products as "salon-only," despite the products being sold in mass-market retail stores. The court found that the plaintiffs had standing to seek injunctive relief, even though they were knowledgeable about the misrepresentation); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635 at *6-7 (N.D. Cal., 2012) (same).

The same is true in this case. Defendant's motion should be denied.

### I. B.    Plaintiff has standing to assert claims based on the substantially similar products at issue in this lawsuit.

Courts have found that class representatives have standing to sue for products not purchased as long as those products are "substantially similar" to products they did purchase. In these cases, courts compare the products the plaintiff purchased with those the plaintiff did not purchase and determines whether the labels are similar, the ingredients are similar, the products are of the "same kind," and the alleged misrepresentations are similar. If the similarities are substantial enough, the courts find that the named plaintiff has standing to sue for all the products.

Page 3   RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

The court in *Jovel v. I-Health, Inc.*, 2013 U.S. Dist. LEXIS, 139661, at *30 (E.D.N.Y., 2013) also held that the products at issue were sufficiently similar for the class representative to have standing. The plaintiff purchased a dietary supplement, the BrainStrong Kids. *Id.* at *3. The defendant asserted that the plaintiff did not have standing to pursue two products she did not purchase. The plaintiff claimed that the products were "substantially similar in all material respects." *Id.* at *27. Citing *Astiana*, *supra*, the *Jovel* court said that the critical inquiry is whether the products are "sufficiently similar." The court found they were. *Id*. at *29-30.

The products had similarities in packaging and labeling. The packaging for each supplement stated that it is a "natural DHA daily supplement." *Id.* at *30-31. The "crux of the alleged misrepresentation" of all products, the court found, was the same. *Id.* at *31. The *Jovel* court found that the class representative had standing to pursue claims related to all products even though they had not purchased all of them. *Id.*

In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 2012 WL 2990766, at *1 (N.D. Cal., 2012) plaintiffs filed a class action alleging that defendant misrepresented its ice cream, falsely labeling the product as containing all natural ingredients. The defendant contended that the plaintiffs lacked standing to bring claims based on products plaintiffs did not purchase. The plaintiffs argued that there is "sufficient similarity" between the products they did purchase and those they did not, and that their claims should survive dismissal. *Id.* at *11. (Plaintiffs further argued that any concerns regarding standing and adequacy were better addressed at the class-certification stage. *Id*.)

The *Astiana* court noted that "the critical inquiry seems to be whether there is

Page 4    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

sufficient similarity between the products purchased and not purchased." *Id*. The court found that plaintiffs had alleged sufficient similarity. *Id*. at *13 Plaintiffs were challenging the same kind of food products (ice cream) as well as the same labels for all the products ("All Natural Flavors"). *Id.* The only difference was the flavor of the ice creams. Other California district courts that have held the same: *Lanovaz v. Twinings N.A., Inc.*, No. C-12-02646 (RMW), 2013 WL 2285221, at *3 (N.D. Cal. May 23, 2013); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000,1005-06 (N.D. Cal. 2012); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869-72 (N.D. Cal. 2012).

In *Brown v. The Hain Celestial Group. Inc.*, 913 F.Supp.2d 881(2012) the plaintiffs alleged that the defendants falsely advertised, marketed, sold, and labeled cosmetic products as organic that were not organic. The defendant argued that the plaintiffs had not personally purchased all the products at issue. The plaintiffs countered that the issue should be addressed at the class-certification stage. In making its ruling, the *Brown* court first examined whether the products were substantially similar. The misrepresentations, the court found, were identical across all products. Because the products were similar, with the same misrepresentations, the court held that the standing argument should be analyzed in the context of class certification, not a motion to strike or motion to dismiss. *Id*., at 890-91.

See, also, *In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*, 2013 WL 6450701, at *4 (D.N.J., 2013). There, the court held that the standing inquiry can and should be put off until the class-certification stage, as long as certain criteria are met. The plaintiffs sued over anti-wrinkle creams manufactured by the defendant, including fourteen products the class representatives did not purchase. In evaluating the

Page 5    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

defendant's argument that the plaintiffs had no standing to bring claims for products not purchased, the court again considered whether the products were "substantially similar." The court said that the standing inquiry for products not purchased could be analyzed during the class-certification stage if: (1) the basis for each claim is the same for products the class representative purchased and those he/she did not; (2) the products are "closely related"; and (3) defendants are the same. The court found that, here, (1) plaintiffs were alleging the same false or misleading statements for all products; (2) the products were all closely related because they all fell within the same product lines; and (3) plaintiffs' claims "all target the same [d]efendant." The court found it appropriate to defer the inquiry to the class-certification stage. *Id.* at *4.

In the case now at issue, the basis for each claim is identical; the labels that misled consumers about the quantity of product do so in an identical manner.  Each of the front-facing labels overstates the actual quantity of product by at least double.

Next, the products are all closely related. The named products are all nutritional supplements. Each of the accused products is sold as discreet units, such as a capsule, tablet, or soft chew.  Each is a nutritional supplement that is purchased based on the number of units in the package, and the amount of active supplement ingredient per unit.  Finally, plaintiff's claims all target the same defendant.

Plaintiff has standing to bring this class action based on all of the accused products.  Defendant's motion should be denied.

**II. A. 1. a.    The law relating to breach of contract does not vary to the degree that prevents a nationwide breach of contract claim from proceeding. Further, determination of whether plaintiff's breach of contract claim can proceed as a nationwide class action is premature.  That issue should be addressed at the class certification stage.**

Page 6    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

Defendant's argument overstates the significance of the variations in the various states' contract law. While there may be issues of contract law that vary from state to state, none of these apply with sufficient force or significance given the simple nature of the contract at issue in this case. Further, defendant's argument is premature. This is an issue that should be addressed at the class certification stage.

To begin, defendant attempts to unnecessarily complicate the matter of when an advertisement constitutes an "offer." (Def's Mot., p. 15). Certainly, under different facts, that might be an issue. Here, however, it is not. The "advertisement" at issue contained all the terms necessary to comprise a unilateral offer. There was a price term, and the Principal Display Panel[2] indicated the type of supplement being offered, and it purported to tell the purchaser both the number of units, and the quantity of supplement in each unit. *SAC*, paras.13-27.

The concept of an advertisement comprising an offer was recently addressed in an advertising-based class action claim within this District. The result was contrary to defendant's position. In *Kearney v. Equilon, LLC*, No. 3:14-cv-00254-HZ the issue was whether the "Ski Free" advertisement and promotion posted at Shell fuel stations within five states constituted a contract which could be breached. Shell promised motorists that they would receive a "free lift ticket" if they purchased 10 gallons of fuel. Instead, defendant gave purchasers a "buy one get one free" coupon instead of a coupon for a free lift ticket. Defendant claimed that the contract law varied too widely, and the breach of contract claim was not appropriate for a multi-state class.

---

[2] The face or front facing portion of packaging for nutritional products is called the "Principal Display Panel" by the United States Food and Drug Administration ("FDA"). The FDA defines this as the portion of the package that is most likely to be seen by the consumer at the time of display for retail purchase. 21 CFR 101.1.

Judge Hernandez disagreed, and wrote:

[I]f an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation," then the advertisement "constitutes an offer, acceptance of which will complete the contract." *Lefkowitz v. Great Minneapolis Surplus Store*, 86 N.W.2d 689, 691 (1957). *Kearney*, No. 3:14-cv-00254-HZ, Ex. "A," *Order and Opinion*, p. 7.

He then concluded that for the purposes of contract analysis at issue there:

Neither Defendant nor Plaintiffs addressed the issue of which jurisdiction's law would apply to the nationwide claim for breach of contract. This issue will not be addressed here except to note that *this Court found no meaningful distinctions within the different states' laws which would change this Court's analysis of the issue*. *Id.*, at 6, n.2. (Italics added.)

Defendants claim that "even the basic question of whether there is a contract between Plaintiff and VSI would require a state-by-state analysis." Under the straightforward facts of this case, that is simply not so. Instead, application of hornbook law of offer and acceptance is all that is required. Was there an offer by defendant to sell a particular quantity of supplement, was that offer accepted when plaintiff purchased the supplement at the price, and did defendant breach the contract when it provided packages that contained half or less of the advertised quantity of supplement?

Defendant's reference to the possible need to determine whether extrinsic evidence is admissible is also a red herring. (Def's Mot., p.16). Here, the facts are simple and the terms straightforward. The offer presented by the Principal Display Panel is not ambiguous or subject to differing interpretations. Instead, it is unambiguous and the Court can determine the meaning as a matter of law.

Defendant's concern about varying statutes of limitation is, initially, an issue to be considered in a motion to certify the class, and not a motion to dismiss. Regardless, the existence of varying SOLs for various states does not support dismissal of the

Page 8    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

contract claim, or a ground to not certify the case as a class action. Instead, it merely presents an issue of administration to be dealt with through class definition.

Defendant's discussion of *Montoya v. Villa Linda Mall, Ltd.*, 793 P.2d 258, 261 (N.M.,1990) for the proposition that attorney's fees may be awarded for breach of contract is curious. In *Montoya*, the contract at issue *included an attorney fee provision*. The contract language provided the basis for the court's attorney fee award, not common law or statute. Similarly, defendant's reliance on *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W. 3d 552, 564 (Tex.App., 2003) for the proposition that attorney fees are mandatory under certain conditions is also interesting. The Texas statute at issue provides that attorney fees "may" be awarded. V.T.C.A., Civil Practice & Remedies Code § 38.001:

> § 38.001 - Recovery of Attorney's Fees - states: "A person *may* recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs ****." (Italics added.)

Regardless, the points raised by defendant simply do not preclude this claim from going forward as a national class. Other courts have allowed a nationwide class to proceed under a breach of contract theory. In *In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litigation*, 270 F.R.D. 521 (N.D.Cal., 2010), the trial judge certified a nationwide class action alleging declaratory relief and breach of contract claims. The *Conseco* plaintiffs challenged certain life insurance policy changes for policies administered by defendant Conseco Life Insurance Company ("Conseco"). The *Conseco* court granted the motion to certify the nationwide class:

> Conseco relies heavily on *Zinser* and *In re Paxil* in contending that the variations in state law defeat certification. Both of those cases, however, concerned nationwide product liability actions involving significant variations in the state tort laws governing the multiple claims asserted by the plaintiffs. See *Zinser*, 253

Page 9    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

> F.3d at 541-42; *In re Paxil*, 212 F.R.D. at 542-44. Here, by contrast, plaintiffs assert only two claims-breach of contract and declaratory judgment-on behalf of the national class. Conseco has not identified any state-to-state variations in the law governing declaratory judgment, and Conseco *overstates the extent of any variations in state contract law, including as to the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence.* First, contrary to Conseco's representations, several courts have recognized that the law relating to the element of breach does not vary greatly from state to state. See, e.g., *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir.2004); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D.Fla.1997). Second, plaintiffs have persuasively rebutted Conseco's assertions concerning variations in the causation and damages elements of the contract claim. Finally, the Court agrees with plaintiffs that, as neither party has asserted that the form policy contract contains ambiguous terms (rather, they offer competing interpretations based on the face of the documents), admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue. Plaintiffs' contractual interpretations may ultimately be rejected at the summary judgment stage or disproved at trial, but they are not patently untenable from the face of the documents, and do not demonstrate a lack of common issues of law. *Id*. at 529. (Italics added).

If defendants were correct, there could *never* be a nationwide class action based on breach of contract, yet there are. See, for example, *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1308, 1311 (S.D.Fla.1999), *aff'd,* 333 F.3d 1248 (11th Cir.2003) (upheld the certification of a class of 10,000 Exxon gas station owners who claimed that Exxon had breached their individual sales agreements).

See, also, *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D.Ga.1983):

> When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such. *E.g., Broad v. Rockwell Intern. Corp.,* 642 F.2d 929 (5th Cir.) (en banc) *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture agreement); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract for failure to provide charter tour services); *Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124 (S.D.N.Y.1978) (validity of general release provision of contract); *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165 (D.Col.1975) (breach of contract); *Janicik v. Prudential Insurance Co. of America,* ——Pa.Super.Ct. ——, 451 A.2d 451 (1982) (interpretation of

Page 10    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

form insurance contract); *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn.*, 281 Or. 533, 577 P.2d 477 (1978) (form mortgage); *Buchanan v. Brentwood Federal Savings and Loan Assn.*, 457 Pa. 135, 320 A.2d 117 (1974) (form contract); *Perlman v. First National Bank of Chicago*, 15 Ill.App.3d 784, 305 N.E.2d 236 (1st Dist.1973) (360-day year method of computing interest); *Georgia Investment Co. v. Norman*, 229 Ga. 160, 190 S.E.2d 48 (1972) (validity of loan note); *Silverstein v. Shadow Lawn Sav. & Loan Assn.*, 51 N.J. 30, 237 A.2d 474 (1968) (breach of contract based on method of calculating interest).

Defendant has presented no good reason -- particularly at the pleading stage -- that plaintiff's contract claim should not proceed as a national class action. Its motion should be denied.

### II. A. 1. b.    Breach of warranty claim

Plaintiff agrees that proceeding under each of the various states' breach of warranty laws would be less efficient than proceeding under a standard federal law pertaining to breach of express and implied warranties on consumer goods.[3] Plaintiff therefore requests leave to amend his *SAC* to dismiss common law breach of warranty claims for the national class, and to add a breach of warranty claim under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

### II. A. 1. c.    The law, when applied to the facts of this case, does not present an issue with class certification of plaintiff's unjust enrichment claim. Regardless, that matter should be addressed at a motion to certify the class, and not in this motion to dismiss.

As with defendant's attack on plaintiff's contract claim, its argument is premature. Defendant's position and analysis of that matter is appropriate for an FRCP 23 class certification dispute, and not a motion to dismiss.

Regardless, plaintiff agrees that the law regarding unjust enrichment within the various states differ. The variations, however, fall into a small number of groupings in a

---

[3] Plaintiff understands that the Magnuson–Moss Warranty Act looks to state law regarding implied warranties, but urges that this is a matter to be dealt with at the class certification stage and not a motion to dismiss. See, *Walsh v. Ford Motor Company*, 807 F.2d 1000,1016-17 (D.D.C.,1986).

way that allows the claim to be handled with a few subclasses.

This process was at issue in *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433. There, the court noted that for an unjust enrichment claim to proceed in a 50-state class action, *at a class certification preceding* the plaintiffs must:

> establish[] appropriate subclasses and demonstrat[e] that each subclass meets the Rule 23 requirements ... The Plaintiffs must come forward with the exact definition of each subclass, its representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and (b)." *Zinser,* 253 F.3d at 1190 (citing *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271 (S.D. Ohio 1997)).

This problem was successfully addressed in *School Dist. of Lancaster v. Lake Asbestos of Quebec, Ltd.*, 789 F.2d 996, 1010 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, and *cert. denied*, 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986) ("*School Asbestos*"). The *School Asbestos* opinion demonstrated what is required from a district court when variations in state law exist. The court affirmed class certification, despite variations in state law, because:

> To meet the problem of diversity in applicable state law, class plaintiffs have undertaken an extensive analysis of the variances in products liability among the jurisdictions. That review separates the law into four categories. Even assuming additional permutations and combinations, plaintiffs have made a creditable showing, which apparently satisfied the district court, that class certification does not present insuperable obstacles. 789 F.2d at 1010.

Here, there has been no discovery of the facts relating to class certification, and no opportunity to apply those facts to such an analysis. This discovery will have a bearing on the nuances of the unjust enrichment claim, whether it can proceed as a class action, the makeup of subclasses, and other relevant issues. This Court should deny defendant's motion, and allow the issue to be properly addressed at the class certification stage.

**II. A. 1. d.    The law, when applied to the facts of this case, does not present an**

Page 12    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

**issue with class certification of plaintiff's fraud claim.  Regardless, that matter should be addressed at a motion to certify the class, and not in this motion to dismiss.**

As with the above claims, defendant's attack on plaintiff's fraud claim is premature.  Defendant's position and analysis of that matter is appropriate for an FRCP 23 class certification dispute, and not a motion to dismiss.

Even so, a fraud claim can be properly certified for nationwide class treatment. For example, in *Rodriguez v. It's Just Lunch, International*, 300 F.R.D. 125, 138-39 (S.D.N.Y., 2014), the court held that fraud claims based on uniform misrepresentations made to all members of the class (such as those made by the Vitamin Shoppe, through its packaging in this case) and unlike those based on individualized misrepresentations are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.

Defendant's position is actually a challenge to the predominance requirement. As noted in *Stratton v. American Medical Security, Inc.*, 266 F.R.D. 340 (D.Ariz.,2009):

> Predominance is a test readily met in certain cases alleging consumer or securities fraud ..." *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. 2231 (citing Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966)). Courts have recognized that certain consumer fraud claims may be less manageable as a class action, though. See *Winkler v. DTE, Inc*., 205 F.R.D. 235, 242 (D.Ariz.2001). In determining predominance for a fraud case, the court can consider whether there is material variation (1) in the representations made by the defendants to the class members or (2) in the kinds or degrees of reliance by members of the class. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990 (9th Cir.2006) (citing Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966)).

Here, the representations were all written and displayed on the product packaging, so little, if any material variation existed. Second, the misrepresentations were contained on the Principal Display Panel, which the FDA states is "the portion of the package that is most likely to be seen by the consumer at the time of display for

Page  13    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

retail purchase." Beyond that, the misrepresentations were material, in that they went to the crux of what class members were paying for. See, *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1022 (9th Cir., 2011) where the court stated "[i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."  Defendant's motion should be denied.

### II. A. 2. Other states' interests in having their own laws applied is a factor only where an actual conflict of laws exists under the facts and circumstances of the case.

Here, as above, defendant's challenge is premature, and should be brought at a later date in a challenge to plaintiff's motion to certify the case as a class action.

This question arises only when there is a material conflict of the laws between the various states and those of the forum state. The fact that two or more states are involved in a class action does not itself indicate that there is a conflict of law problem. *See Wash. Mut. Bank,* 24 Cal.4th at 919 (2001). A problem only arises if differences in state law are material, that is, if they make a difference in the litigation. *Id.* at 919–20, 103 Cal.Rptr.2d 320, 15 P.3d 1071; *See In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 882 (3d Cir.1984) ("Any differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law.").

As discussed above, given the simple and uniform representations at issue, the differences in the various state laws related to the claims in this case will have no significant effect on the outcome at trial.  Because of that, choice-of-law issues raised by defendant do not prevent this case from being maintained as a class action. Defendant's motion should be denied.

Page 14   RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

### II. B.    Application of each state's law does not destroy commonality and predominance.

Defendant errantly relies upon *Hutson v. Rexall Sundown, Inc.*, 87 So.2d 1090 (D.Fla., 2003), and claims it is *exactly* on point. See, Def. Mot., p. 33. Because *Hutson* attempted to bring a claim for all 50 states under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), it is inapplicable to this case. *Id.*, 1093-95.

As the *Hutson* court noted, the alleged deception involved nationwide sale of products in Florida and 49 other states, and claims of non-resident consumers would require application of the consumer protection laws *from each of those states*. *Id.*, 1093. That makes sense, as the consumer protection laws vary greatly and in material ways from state to state. *Gianino v. Alacer Corp.*, 846 F.Supp.2d 1096, 1100 (2012). Plaintiff, in the case now before this court, specifically *has not* attempted to bring claims for other statues under the Oregon UTPA. See, *SAC,* paras. 77-81.

As discussed above, because of the simple and uniform representations at issue, the differences in the various state laws related to the national claims at issue in this case will have no significant effect on the outcome at trial. The motion should be denied, and the matter be fully addressed in the context of a motion to certify the class.

### III. A.    Plaintiff's breach of contract claim is proper under Oregon law. Defendant's attempt to use fine print on the back of the packaging to undo the affirmative misrepresentations on the Principal Display Panel is procedurally unconscionable and against public policy.

Defendant's argument regarding plaintiff's breach of contract claim overlooks pertinent facts. First, the FDA guideline for supplement labeling requires that accurate information regarding the contents of the package to be displayed on the Principal Display Panel. The following questions and answers appear on the FDA website:

Page 15    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

**Answers**

1. **What is the net quantity of contents statement for a dietary supplement?**
   The net quantity of contents statement for a dietary supplement is the statement that informs consumers of the amount of dietary supplement that is in the container or package.
   21 CFR 101.105(a)

2. **Where must I locate the net quantity of contents statement on my label?**
   You must locate the net quantity of contents statement on your product label as a distinct item in the bottom 30 percent of the principal display panel, in lines generally parallel with the base of the container. If the principal display panel of your product is 5 square inches or less, the requirement for placement within the bottom 30 percent does not apply when the declaration of net quantity of contents meets the other requirements of 21 CFR 101.
   21 CFR 101.105(f)

3. **How must I express the net quantity of contents statement on my label?**
   You must express the net quantity of contents statement in either weight, measure, numerical count or a combination of numerical count and weight or measure. When you express this quantity as a weight or measure, you must specify both metric (grams, kilograms, milliliters, or liters) and U.S. Customary System (ounces, pounds, or fluid ounces) terms.
   Public Law 102-329, August 3, 1992 and 21 CFR 101.105

   *http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/DietarySupplements/ucm070596.htm*

In other words, defendant's scheme of seeming compliance with the FDA rules regarding Primary Display Panels (albeit accomplished through false statements), followed by its retraction / modification in fine print on the Supplemental Facts Panels located on the back of the packages, does not comply with the industry standard labeling requirements for nutritional supplements. 21 CFR 101.105. Instead, the contract limiting language created by defendant's "per serving" verbage in small print on the back of each package was procedurally unconscionable, and violated public policy. See, *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 577, 553-558[4] (2014).

---

[4] The current Westlaw internal page numbering for this case appears to be in error, hence the out of range internal page numbering.

Because of that, the "retraction language" relied upon by defendant is not a part of the contract formed between the parties, and provides it no respite. Defendant cannot undo this misrepresentation and violation of the CFRs by simply pointing to unconscionable language hidden on the back of the package. Defendant's motion should be denied.

### III. B.    Plaintiff seeks leave to replead his Oregon and federal breach of warranty claims as Magnuson-Moss Act claims.

Defendant argues that because the Oregon UCC excludes claims involving "consumables," and the UCC preempts all breach of warranty claims, then no breach of warranty claim is available under Oregon law. Def's Mot., p. 39. Plaintiff disagrees.

Regardless, plaintiff requests leave to amend his *SAC* and remove the existing breach of warranty claims, and add a breach of warranty claim under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. The Act provides a framework for adjudication of implied warranties for the sale of goods to consumers on a nationwide basis. *Walsh v. Ford Motor Company*, 807 F.2d 1000,1012-16 (D.D.C.,1986). This amendment would provide a more straightforward method to deal with breach of warranty claims for the nationwide class, and for the Oregon subclass.

### III. C.    Plaintiff's unjust enrichment claim is pled in the alternative.

Defendant first claims no contract was formed (Def's Mot., pp. 36-39), then later argues that a contract was formed and consequently no unjust enrichment claim is available. (*Id.,* pp. 42-43.) Plaintiff's pleading and his position here is simple and constitutes an alternative pleading; if a viable breach of contract claim exists, then there is no need for an unjust enrichment claim. If no viable breach of contract claim exists, then plaintiff should be allowed to proceed with his unjust enrichment claim.

Page 17    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

Defendant's motion should be denied.

### III. D.     Plaintiff's has properly pled his fraud claim.

Defendant claims plaintiff could not have reasonably relied upon the misleading statements contained on the Principal Display Panel of its accused products. Def's Mot., pp. 43-45. Defendant's position is particularly interesting given that the industry standard, set forth at 21 CFR 101.105, is that accurate information regarding quantities of supplement appear *on the front-facing Principal Display Panel*.

Defendant claims instead that plaintiff should have -- as a matter of law -- distrusted the clear and unequivocal standardized information it printed on the Principal Display Panel (apparently but not actually in compliance with the FDA rules at 21 CFR 101.105 because of its falsity) and searched the back of the packaging to see if he was being misled or defrauded. See, Def's Brief, p. 45. Plaintiff had the right to rely -- and did rely -- on the standardized factual information on the Principal Display Panel.

Defendant's reliance on *Placencia v. World Sav. Bank, FSB*, 2011 WL 2460921 (D.Or., 2011) is misplaced. There, the court noted:

> the heart of this claim is that the defendant allegedly misled the plaintiff about the fact that the Trust Deed created a trust in which the plaintiff pledged the property to secure the performance of her obligations under the Note. But the alleged "misrepresentation" is belied by the very documents the plaintiff signed. As described above, the Trust Deed explicitly informed her that the property would be put in a trust.

Unlike the case now at issue, nothing in the *Placencia* documents was claimed to be inaccurate or misleading. Instead, the plaintiff was, essentially, simply unclear on the meaning and effect of the accurate and truthful documents at issue. *Id.*, *8.

Defendant's cite to *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir., 2012) is similarly unhelpful. In *Davis*, the plaintiff brought a claim that the annual credit

Page 18    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565

card fee at issue was not adequately disclosed because he did not see it when he signed up for the card. Essentially, the plaintiff simply failed to read the term in the documents when he applied for the card. *Id.*, at 1161-64. *Davis* would apply to the instant case if, for example, HSBC had represented on its advertisements or main disclosure statements "annual fee $59," yet in fine print indicated that the "annual fee" of $59 was charged twice a year. Those are, however, not the facts of that case.

As with *Placencia, Davis* contained no initial misleading statement intended to be the primary information seen by the consumer that was later modified or retracted by fine print. As such, neither case is relevant to the matters before this court.

The other cases cited by defendant, *Eghtesadi v. Wells Fargo Bank, N.A.*, 2013 WL 1498999 (S.D. Cal., 2013) and *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 4616796 (S.D. Cal., 2008), are similar to *Placencia* and *Davis* in that neither involve a false representation. Instead, both involve plaintiffs who failed to discover a term or terms within the contract documents because of a lack of diligence.

Here, whether it was reasonable for plaintiff to rely on defendant's representations in the Principal Display Panel is a jury question, and not appropriate for a motion to strike. Defendant's motion should be denied.

### III. E.    Plaintiff's UTPA claim sufficiently alleges harm.

Defendant claims that plaintiff has not alleged that he suffered harm from its allegedly deceptive acts. Plaintiff's UTPA claim incorporates by reference paragraphs 1 through 57 of the SAC. *SAC*, para. 77. Paragraphs 1-29 and 48-57 show that plaintiff paid for what he reasonably believed was a certain quantity of supplement, but instead received half as much product. These allegations adequately allege economic

harm.

Defendant may base its argument on the fact that plaintiff has not yet amended his complaint to seek monetary damages in his UTPA claims. That was because of ORCP 32H's requirement of 30 days notice and chance to cure before seeking money damages. Plaintiff seeks leave to amend his *SAC* to add a claim for monetary damages under the UTPA and all other claims for the Oregon class members.

Defendant's motion should be denied.

**Dated:** January 20, 2015.

                                        Rick Klingbeil, PC
                                        /s/ Rick Klingbeil

                                        _____
                                        Rick Klingbeil, OSB #933326
                                        Of Attorneys for Plaintiff
                                        2222 NE Oregon St., Ste. 213
                                        Portland, OR 97232
                                        Ph: 503-473-8565

Additional Attorneys:
Brooks F. Cooper, OSB #941772
Brady Mertz, OSB #970814
Foley Bezek Behle & Curtis, LLP
(*Pro hac vice* applications to be submitted)

Page 20    RESPONSE TO DEFENDANT VITAMIN SHOPPE INDUSTRIES INC.'S MOTION....

RICK KLINGBEIL, PC
2222 NE Oregon St., Ste. 213
Portland, OR 97232
Ph: 503-473-8565