IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEE WALTERS, MD, an Oregon
resident,

        Plaintiff,

           3:14-CV-01173-PK

v.

           FINDINGS AND
           RECOMMENDATION

VITAMIN SHOPPE INDUSTRIES, INC.,
a Delaware corporation,

        Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Lee Walters brings this action against defendant Vitamin Shoppe Industries, Inc., a Delaware corporation ("VSI"), alleging breach of contract, breach of warranty, unjust enrichment, and fraud on behalf of a nationwide class of consumers of a set of products sold by VSI, as well as violations of Oregon's Unlawful Trade Practice Act ("UTPA") on behalf of a subclass of Oregon consumers. This court has jurisdiction over this action pursuant to 28 U.S.C.

FINDINGS AND RECOMMENDATION - 1

§§ 1332(d)(2), the "Class Action Fairness Act."

Walters seeks temporary and permanent injunctions preventing VSI from engaging in further UTPA violations, reimbursement of reasonable costs and fees, restitution for the members of the nationwide class for the amount VSI was unjustly enriched, and monetary damages incurred by members of the nationwide class resulting from VSI's alleged breach of contract, breach of warranty, and fraudulent misrepresentation.

Now before the court is VSI's motion to dismiss (#24). I have considered the parties' filings, their arguments before the court, the supplemental briefs submitted following oral argument, and all of the pleadings on file. For the reasons that follow, VSI's motion should be granted in part and denied in part as moot.

## FACTUAL BACKGROUND[1]

Plaintiff and proposed class representative Lee Walters, M.D., is a medical doctor and an Oregon resident who purchased one package of "Calcium 1000 mg Caramel Chews" from VSI in May 2014 at the Lloyd Center Vitamin Shoppe in Portland, Oregon. VSI is a retailer of nutritional products and supplements. It sells national and proprietary brands of vitamins, minerals, herbs, specialty supplements, sports nutrition, and other health and wellness products primarily to customers in the United States. VSI is headquartered in North Bergen, New Jersey.

Walters' claims arise from the contention that the front-facing portion of various VSI products (the "Principal Display Panel") "misrepresent[s] the quantity and characteristics of the

---

[1] When considering the factual allegations on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Kearns v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). I construe the facts with these standards in mind.

FINDINGS AND RECOMMENDATION - 2

contents" contained within the products' packaging because the volume displayed thereon is "per serving" rather than "per unit." Second Amended Complaint ("SAC"), #21, ¶ 18, 22. To provide a representative example, the packaging for the Calcium 1000 mg Caramel Chews purchased by Walters does not indicate that the volume referenced in its title and upon its Principal Display Panel refers to the total volume per serving, which amounts to two 500 mg chews, rather than the total volume per chew. A customer must therefore consume two 500 mg chews in order to reach the 1000 mg amount advertised on the Principal Display Panel. The "per serving" information that reveals this fact, however, is available in the supplemental nutritional information section ("Supplemental Facts Panel"), which is located on the reverse side of the product's packaging and is "shelved to face away from the customer." *Id.* ¶ 25. Walters claims that the lack of information contained on the Principal Display Panel of the various VSI products containing this informational disparity ("VSI Products") creates "a substantial likelihood of confusion" for customers of VSI. *Id.* ¶ 18.

## PROCEDURAL BACKGROUND

Walters filed this action on July 23, 2014. His original complaint (#1) brought claims for violation of California's Consumer Legal Remedies Act, Unfair Competition Law and False Advertising Law, as well as Oregon's UTPA on behalf of two proposed subclasses of consumers. Complaint, #1, ¶¶ 68–90. Walters amended his complaint on November 3, 2014, to remove a prior plaintiff, "Jane Roe." First Amended Complaint ("FAC"), #18. Walters amended his complaint a second time on November 24, 2014, to state claims for common law fraud and unjust enrichment. Second Amended Complaint ("SAC"), #21.

VSI filed this motion December 11, 2014. Motion, #24. On February 11, 2015, the court

FINDINGS AND RECOMMENDATION - 3

heard oral argument on VSI's motion. At oral argument, Walters sought to file supplemental briefing regarding two additional issues. Walters filed that brief on February 19, 2015 (#36). VSI filed its response to that brief on February 25, 2015 (#37). The matter is now fully submitted and ready for decision.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004); *see also* Fed.R.Civ.P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), citing *Iqbal*, 129 S.Ct. at 1949.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

FINDINGS AND RECOMMENDATION - 4

notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## DISCUSSION

VSI moves to dismiss Walters' claims for breach of contract, breach of warranty, unjust enrichment, fraudulent misrepresentation, and violations of Oregon's UTPA for failure to state a valid claim pursuant to Rule 12(b)(6). VSI additionally moves to dismiss Walters' claims seeking injunctive relief and claims for products he did not purchase for lack of standing . VSI also seeks to dismiss Walters' nationwide claims based on differences in state law or, in the alternative, strike the class allegations contained in Walters' Second Amended Complaint. Finally, VSI moves to dismiss Walters' fraud claim for failure to plead with particularity pursuant to Rule 9(b). I will address each issue in turn.

### I. Breach of Contract Claim

VSI first moves to dismiss Walters' breach of contract claim. As a preliminary matter, I note that the parties agree that a contract for a sale of goods governed by UCC Article 2 was formed when Walters purchased the Calcium 1000 mg Caramel Chews. Walters claim relies, in

FINDINGS AND RECOMMENDATION - 5

principal part, on the assertion that individuals paying the marked price for Accused VSI Products "would receive a package containing the specified quantity of Units and that each of those Units would contain the number of MG's or IU's of the ingredient as shown on the Principal Display Panel," rather than the actual amount, as clarified by the Supplemental Facts Panel. SAC, #21, ¶ 49. Walters considers the information contained on the Principal Display Panel to contain contractual terms and the front-facing portion of the Accused VSI Products to amount to a contractual offer. *Id.* ¶ 48. It is undisputed, however, that the Supplemental Facts Panel contains the information required to determine the amount of units per serving, which is the key "omitted" information that Walters argues constitutes a breach. SAC, #21, ¶ 22. The parties' contention lies in these legal distinctions.

At the motion to dismiss stage, I must take all factual allegations made in the complaint as true. I am not obligated, however, to accept legal conclusions in the same manner. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In its motion, VSI argues against Walters' legal conclusion that the information contained on the Principal Display Panel constitutes a contractual offer. VSI asserts that Walters' construction of the terms of the alleged offer contravenes established law in that Walters' construction considers only limited aspects of the VSI Products' packaging to constitute the terms of the offer and subsequent contract. Def.'s Motion, #24, 36–37.

Oregon law requires that, when construing the contents of an instrument, a judge must "ascertain and declare what is . . . contained therein," and that a judge must not "insert what has been omitted, or [] omit what has been inserted . . . ." ORS 42.230. VSI argues, and I agree, that

the terms of the "offer" contained on the Accused VSI Products' packaging are not limited to the Principal Display Panel; the terms must necessarily include the Supplemental Facts Panel as well. *See, e.g., DiTommaso Realty, Inc. v. Moak Motorcycles, Inc.*, 96 Or. App. 431, 436 (1989) (upholding a trial court's decision to enforce a contract and refusal to relieve a party from the terms thereof for the failure to read the fine print); *Placencia v. Wordl Sav. Bank, FSB*, 2011 WL 2460921 at *8 (D. Or. May 12, 2011) (Hubel, J.).

It is established in Oregon and elsewhere that a valid acceptance must mirror the exact terms of an offer and must not change or qualify those terms. *See, e.g., C.R. Shaw Wholesale Co. v. Hackbarth*, 102 Or. 80, 96 (1921). The information relevant to discerning serving size, the amount of product per unit, and the total volume of contained within the packaging for the Accused VSI Products is made available through the combination of the Principal Display Panel and Supplemental Facts Panel. SAC, #21, ¶ 22. Walters' contention centers on the fact that some relevant information is found only on the Supplemental Facts Panel, located on the reverse side of the product "in much smaller type." *Id.* In response, VSI compares the Supplemental Facts Panel to "fine print," and argues that individuals entering into contracts are not absolved from reading fine print when ascertaining the terms of the contract. Def.'s Motion, #24, 36 (citing *DiTommaso Realty, Inc.*, 96 Or. App. at 436). I agree with VSI that Walters' failure to account for the information contained in the terms printed on the packaging, whether on the front facing portion or the reverse-side, does not place VSI in breach of the contract formed by Walters' purchase of the product.

Walters argues that VSI's analysis "unnecessarily complicates the matter of when an advertisement constitutes an 'offer.'" Pl.'s Response, #31, 7. Presumably in an attempt to

FINDINGS AND RECOMMENDATION - 7

compare the front-facing portion of the Accused VSI Products to a contractually binding advertisement, Walters cites to a recent case from this district regarding an advertisement for a promotion entitling Shell brand gasoline customers to a free ski lift ticket with the purchase of ten gallons of fuel. *Id.* (citing *Kearney v. Equilon, LLC*, No. 3:14-cv-00254-HZ, 2014 WL 6769697 (D. Or. Dec. 1, 2014)). The court noted that, in exceptional cases, advertisements may be clear, definite, and explicit enough to "constitute an offer, acceptance of which will complete the contract." *See Kearney*, 2014 WL 6769697 at *3 (citing *Lefkowitz v. Great Minneapolis Surplus Store*, 251 Minn. 188 (1957)). The *Kearney* court therefore determined that it would be premature to deny a breach of contract claim at the motion to dismiss stage of proceedings. *Id.* at *5. The findings in *Kearney*, however accurate, are inapposite with regard to this case. Here, there is no exceptional advertisement to consider and no similar factual dispute, as the contract at issue and Walters' breach claim arise out of a purchase of a package that contains both a Principal Display Panel and a Supplemental Facts Panel, the total contents of which provide the relevant contractual terms.

Further, in his Response to VSI's motion to dismiss Walters' breach of contract claim, Walters argues for the first time that VSI's labeling practices are "procedurally unconscionable, and violate[] public policy" because they are not in compliance with Federal Department of Agriculture ("FDA") rules regarding labeling. Pl.'s Response, #31, 16. Walters apparently derives his "procedurally unconscionable" argument from the fact that the VSI Products' Supplemental Facts Panel contains product measurement information not readily available to customers looking only at the Principal Display Panel and this, Walters argues, violates 21 C.F.R. § 101.105. Pl.'s Supp. Br., #36, 2–3. That provision requires that a dietary supplement's

FINDINGS AND RECOMMENDATION - 8

Principal Display Panel contains "a declaration of the net quantity of contents" which are "expressed in the terms of weight, measure, numerical count, or a combination of numerical count and weight or measure." 21 C.F.R. § 101.105(a). Because the VSI Products' Principal Display Panels express the packages' contents in terms of numerical count, Walters argues that 21 C.F.R. § 101.105(c) is necessarily invoked. That provision requires a manufacturer to include additional weight and measurement information of individual units when the declaration of numerical count "does not give adequate information as to the quantity of food in the package." 21 C.F.R. § 101.105(c). Without more, this would be convincing. However, the FDA's interpretation of the qualifying language in 21 C.F.R. § 101.105(c), evinced by warning letters issued to ostensible violators of 21 C.F.R. § 101.105, shows that a failure to "give adequate information as to the quantity of food in [a] package" arises in situations involving incomparable products. *Accord* Colton Decl., #38, Ex. 5, 3; *see also* Def.'s Resp. to Pl.'s Supp. Br., #37, 5. Specifically, the FDA finds failure to provide adequate information, highlighted in Walters' Response to the instant motion, in situations where "the weight, measure, or size of the individual [food item] can vary greatly." *See, e.g.*, Colton Decl., #38, Ex. 5, 3. For this reason, I find that 21 C.F.R. 101.105(c) is not at issue here because VSI's products are uniform capsules and softgels, rather than food items that "can vary greatly." Walters provides no basis for his assertion, made only his in Response, that the terms presented on VSI's packaging are procedurally unconscionable or against public policy.

For all of these reasons, I find that the terms contained on both the front and rear portions of the Accused VSI Products constitute the "offer" that Walters accepted when purchasing the products. Accordingly, I refuse to omit the Supplemental Facts Panel from my construction of

FINDINGS AND RECOMMENDATION - 9

that contract, based on clear Oregon law. ORS 42.230. Therefore, there is no cognizable legal theory supporting Walters' breach of contract claim, as all the terms of the contract were available and agreed to, and that claim should therefore be dismissed with prejudice.

## II. Breach of Warranty Claim

VSI next moves to dismiss Walters' breach of warranty claim on the basis that governing Oregon law does not create a cause of action for a breach of warranty arising out of a contract for the sale of consumables. Def.'s Motion, #31, 39. Oregon's UCC, rather than common law, governs claims brought for breach of warranty. ORS 74.2070; *First Fid. Bank, N.A. v. First Interstate Bank of Or., N.A.*, 716 F. Supp. 1359, 1362 (D. Or. 1989).

VSI properly points out that the UCC governs transactions for the sale of goods, and draws a distinction between "consumer goods" and "consumables." ORS 72.8010. "Consumables" are "any product which is intended for consumption by individuals." ORS 72.8010(7). Notably, the UCC does not create warranty protections for consumables, and specifically omits consumables from the definition of "consumer goods," for which implied warranty protections do exist. *See* ORS 72.8010(1), (8)--(9). It is undisputed that the VSI Products at issue fit squarely within the definition of "consumables."

In his Response, Walters does not argue in the affirmative that he has stated a claim to relief for breach of warranty, and instead requests leave to amend the SAC to dismiss his claims and add a breach of warranty claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301. Ordinarily, a court should grant leave to amend unless it finds that amendment of the claim would be futile. *See, e.g., Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). I find that granting Walters' request would indeed prove futile, as the MMWA does

FINDINGS AND RECOMMENDATION - 10

not create or anticipate an independent warranty for consumables in the context of a limited warranty, which is analyzed here under Oregon law, and absent a state law warranty for consumables. Courts have dismissed claims seeking to bring action for breach of warranty under similar circumstances and, more importantly, have not preserved independent MMWA claims in their absence. *See, e.g., Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 903–04 (N.D. Cal. 2012). I agree with that approach and find it applicable to the limited warranty claims in the current case.

Therefore, because Walters identifies no warranty protection under Oregon's UCC for the products in question—which are "consumables"—and none exists based on an analysis of relevant law, Walters' breach of warranty claim fails to state plausible a claim to relief and therefore cannot survive a motion to dismiss. Further, Walters' request for leave to amend to bring a similar claim under the Magnuson-Moss Warranty Act would not cure the inherent defects that lead to this result. Walters' breach of warranty claim should be dismissed with prejudice.

### III.   Unjust Enrichment Claim

VSI next moves against Walters' unjust enrichment claim, arguing that it fails in light of a valid and legally enforceable contract existing between the parties.

To state a claim for unjust enrichment, Walters must establish that he conferred a benefit on VSI and that VSI knowingly and unjustly retained the benefit. *Summer Oaks Ltd. P'ship v. McGinley*, 183 Or. App. 645, 654, 55 P3d 1100, 1104 (2002). Unjust enrichment is a quasi contract claim. *Wilson v. Gutierrez*, 261 Or. App. 410, 414 (2014). Where, as here, a valid and legally enforceable contract exists, quasi contract claims are precluded. *Dost v. Nw. Trustee*

FINDINGS AND RECOMMENDATION - 11

*Serv., Inc.*, 2011 WL 5873058 *10 (D. Or. Nov. 21, 2011).

Walters' claim is grounded on the existence of a "valid legally enforceable contract" which precludes a claim of unjust enrichment, as such a claim is grounded on quasi contract. *Prestige Homes Real Estate Co. v. Hanson*, 151 Or. App. 756, 762 (1997), citing *Porter Const. Co. v. Berry et al.*, 136 Or. 80, 85 (1931) ("there cannot be a valid legally enforceable contract and an implied contract covering the same services"). In an effort to preserve his claim, Walters' argues that he pleads unjust enrichment in the alternative. He explains that if his breach of contract claim fails, then his argument for unjust enrichment should stand in its place. Pl.'s Response, #31, 12. However, as I have found that a valid and enforceable contract arose from the transaction at issue, Walter's unjust enrichment claim cannot survive.

For these reasons, Walters' unjust enrichment claim should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## IV.   Fraud Claim

VSI next moves against Walters' fraud claim, arguing that it fails to satisfy the "justifiable reliance" element of fraud required by Oregon law because of the existence of a putative contract between the parties based on a purchase of the product and a generally held principle that "it is not reasonable to fail to read a contract before signing it." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). I agree.

To establish fraud under Oregon law, a plaintiff must show: (1) a false representation of a material fact on behalf of the defendant; (2) that defendant was aware of the falseness of the representation at issue; (3) that the misrepresentation was intended to induce the plaintiff to act or refrain from acting; (4) that the plaintiff justifiably relied on the misrepresentation in acting;

FINDINGS AND RECOMMENDATION - 12

and (5) that the plaintiff was damaged by that reliance. *Pollock v. D.R. Horton, Inc.*, 190 Or. App. 1, 20 (2003) (quoting *In re Brown*, 326 Or. 582, 595, 956 P.2d 188 (1998)); *see also Oregon Pub. Employees' Ret. Bd. ex rel. Oregon v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 423–24 (2004). VSI asserts that Walters' reliance on the alleged misrepresentation was not justifiable, as any failure by Walters to carefully read and compare the terms contained both within the Principal Display Panel and the Supplemental Facts Panel makes reliance on the inconsistencies in the volume represented by those panels unreasonable and unjustifiable.

In support of its position, VSI cites to a series of cases that support the notion that Walters' reliance was unreasonable based on his failure to read the terms contained on the Accused VSI Products in their entirety. These cases analyze a plaintiff's failure to safeguard her own interest; failure to investigate goods; failure to read a contract; and failure to identify easily intelligible material disclosures alleged to be misrepresentations. *See* Def.'s Motion, #24, 43–45 (collecting cases).

Under Oregon law, a claim for fraud is legally undermined where a valid contract has been formed and a party has simply failed to read the terms of that contract. *See, e.g., Knappenberger v. Cascade Ins. Co.*, 259 Or. 392, 398, 487 P.2d 80, 83 (1971) (finding a party bound by an insurance policy even though he was unaware of its terms because he failed to read the policy); *DiTommasso Realty, Inc.*, 96 Or. App. at 434. Further, "any failure by the plaintiff to understand the terms in the documents does not make the use of those terms by defendant fraudulent." *Placencia v. World Sav. Bank, FSB*, 2011 WL 2460921 at *8 (D. Or. May 12, 2011), citing *Knappenberger*, 259 Or. at 398, 487 P.2d at 83.

To establish justifiable reliance, a plaintiff must take some measure to safeguard her own

FINDINGS AND RECOMMENDATION - 13

interests. *Gregory v. Novak*, 121 Or.App. 651, 655, 855 P.2d 1142 (1993). Walters states that the primary representation at issue, the 1000 mg total volume displayed on the Principal Display Panel, was not overtly "predicated on the consumption of more than one [unit], or that it was not an accurate representation of the quantity of [product] per each [unit]." SAC, #21, 6–7. Walters effectively acknowledges that the totality of information was available to him, but that the alleged misrepresentation itself, shown boldly on the front-facing portion of the product's packaging, does not clearly require additional reading of the terms on the back of the packaging. This argument is unconvincing. In similar situations, courts have held that individuals with some familiarity with the subject matter or contractual terms at issue cannot show justifiable reliance when all the terms were available to them. *Kreidler v. Taylor*, 473 F. Supp. 2d 1090, 1104 (D. Or. 2007). The availability of the information on the Supplemental Facts Panel undermines any justifiable reliance in support of Walters' fraud claim.

For all of these reasons, VSI's motion to dismiss Walters' fraud claim for failure to state a claim should be granted and that claim should be dismissed with prejudice.

## V.   UTPA Claim

VSI next moves to dismiss Walters' UTPA claim on the sole ground that Walters has failed to allege that VSI's deceptive conduct has caused him harm. The SAC, however, contains ample information showing that Walters "paid for what he reasonably believed was a certain quantity of supplement, but instead received half as much product." Pl.'s Response, #31, 19; *see* SAC, ¶ 48–57.

The UTPA requires little more than "an ascertainable loss" to support a claim. ORS 646.605; ORS 646.608. A loss is considered "ascertainable" under Oregon law when it may be

FINDINGS AND RECOMMENDATION - 14

"discovered, observed, or established." capable of being discovered, observed, or established." *Scott v. W. Intern. Surplus Sales, Inc.*, 267 Or. 512, 515 (1973).

To the extent that Walters has not alleged economic harm and money damages, VSI's motion is well-received. Walters does not specifically allege an ascertainable harm sufficient to satisfy the UTPA.

Additionally, the court conducted supplemental oral argument on May 6, 2015, to address the relationship between Walters UTPA, breach of contract, and fraud claims. Specifically, the court heard additional argument on whether a UTPA claim can lie against the terms of a valid contract. In light of my findings above that the contract at issue is not "procedurally unconscionable," as alleged by Walters in his Response brief, that the contract does not violate public policy and that Walters can make no showing of justifiable reliance necessary to establish fraud, I find there is no basis for Walters' UTPA claims even if an "ascertainable loss" can be alleged. Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute"). For these reasons, I find that granting Walters leave to amend the infirmities of his UTPA would be futile and that claim should be dismissed with prejudice. *Kendall*, 518 F.3d at 1051.

/ / /

/ / /

/ / /

/ / /

/ / /

FINDINGS AND RECOMMENDATION - 15

## CONCLUSION

For the reasons set forth above, VSI's Motion to Dismiss (#24) for failure to state a claim should be granted as it applies to all of Walters' claims and those claims, along with this case, should be dismissed with prejudice.

Further, VSI's motion to strike class allegations, its motion to dismiss for lack of subject matter jurisdiction, and its motion to dismiss Walters' fraud claim pursuant to Rule 9(b) should be denied as moot. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 13th day of May, 2015.

Honorable Paul Papak
United States Magistrate Judge

FINDINGS AND RECOMMENDATION - 16